UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 19-CR-0070(1) (PJS/KMM) |
| | Case No. 23-CV-0846 (PJS) |
| Plaintiff, | |
| v. | ORDER |
| CURTIS AJ HARRELL, | |
| Defendant. | |

Defendant Curtis Harrell pleaded guilty to possessing a firearm as a felon. ECF No. 90. The presentence report ("PSR") found, and Harrell did not dispute, that he had three prior convictions for a "violent felony" within the meaning of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). The Court sentenced Harrell to 210 months in prison, and that sentence was affirmed on direct appeal. ECF Nos. 107, 112.

This matter is before the Court on Harrell's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. For the reasons that follow, Harrell's motion is denied.[1] Because the record conclusively demonstrates that Harrell is not entitled to relief, no hearing is necessary. *See* Rule 4(b) of the Rules Governing § 2255 Proceedings

---

[1] Harrell also moves for appointment of counsel. Because Harrell's motion is clearly without merit and no hearing is necessary, his motion to appoint counsel is also denied.

for the United States District Courts; 28 U.S.C. § 2255(b); *Noe v. United States*, 601 F.3d 784, 792 (8th Cir. 2010).

### A.  Armed Career Criminal Act[2]

Harrell contends that his prior convictions for (1) first-degree attempted aggravated robbery and (2) second-degree assault do not qualify as predicate offenses under the ACCA.  The Court will address each conviction in turn.

#### 1.  First Degree Attempted Aggravated Robbery

Harrell argues that his conviction for first-degree attempted aggravated robbery under Minn. Stat. § 609.245, subd. 1, does not qualify as a predicate ACCA offense.  *See* Rev. PSR [ECF No. 77] ¶ 36.  Harrell may be correct.  *See United States v. Taylor*, 142 S. Ct. 2015, 2025 (2022) (holding that attempted Hobbs Act robbery is not a "crime of violence" under 18 U.S.C. § 924(c) because the elements of the attempted crime do not require proof of "the use, attempted use, or threatened use of force").

The problem for Harrell, though, is that at the same time that he pleaded guilty to first-degree *attempted* aggravated robbery, he also pleaded guilty to the separate crime of *completed* first-degree aggravated robbery (also under Minn. Stat. § 609.245, subd. 1).  Rev. PSR ¶ 36.  The PSR characterized both the attempt offense and the

---

[2]Harrell's § 2255 motion lists four numbered grounds for relief, but each ground includes multiple unrelated claims and overlaps with other grounds.  The Court therefore organizes its analysis by claim rather than by numbered ground.

completed offense as predicate offenses under the ACCA, but because the two offenses were not "committed on occasions different from one another," the PSR counted only the attempt offense (and not the completed offense) as one of the three required predicate offenses. *Id.*; *see also* 18 U.S.C. § 924(e)(1) (applying enhanced penalties to defendants who have "three previous convictions . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one another"). Thus, even if Harrell is correct and his attempt offense does not qualify as an ACCA predicate, it does not matter, because his completed offense would be counted instead of his attempt offense, and there is no doubt that the completed offense is a "violent felony" for purposes of the ACCA. *See United States v. Gammell*, 932 F.3d 1175, 1179 (8th Cir. 2019) (holding that first-degree aggravated robbery under Minn. Stat. § 609.245, subd. 1, is a "violent felony" under the ACCA); *United States v. Tucker*, 821 F. App'x 659, 661 (8th Cir. 2020) (per curiam) (relying on *Gammell*). Either way then, one of the two offenses listed in ¶ 36 of the PSR qualifies as a predicate ACCA offense.

2. Second Degree Assault

Harrell also argues that his second-degree assault conviction under Minn. Stat. § 609.222, subd. 1, does not qualify as a predicate ACCA offense. *See* Rev. PSR ¶ 39. Specifically, he contends that the second-degree conviction does not qualify because he pleaded guilty both to that offense and to his third ACCA predicate (first-degree

-3-

assault) on the same day, and both crimes were part of the same week-long crime spree. Rev. PSR ¶¶ 39–40.

As noted, under the ACCA, predicate offenses must be "committed on occasions different from one another." 18 U.S.C. § 924(e)(1). The Supreme Court has recently addressed the meaning of this language, identifying a number of relevant factors, including timing, proximity of location, and the character and relationship of the offenses. *Wooden v. United States*, 142 S. Ct. 1063, 1070–71 (2022). The Court noted that, in most cases, "applying this approach will be straightforward and intuitive" and "[i]n many cases, a single factor—especially of time or place—can decisively differentiate occasions." *Id.* at 1071. In particular, the Court observed that courts "have nearly always treated offenses as occurring on separate occasions if a person committed them a day or more apart, or at a 'significant distance.'" *Id.* (quoting *United States v. Rideout*, 3 F.3d 32, 35 (2d Cir. 1993)).

In this case, Harrell's two assaults took place two days apart (January 6 and January 8, 2014) and in two completely different locations (an apartment and an alley). Rev. PSR ¶¶ 39–40. Under these circumstances, there is no doubt that the crimes were "committed on occasions different from one another," and therefore both qualify as predicate ACCA offenses.

### 3. Other ACCA Issues

Harrell also contends that his prior robbery and assault convictions do not qualify as predicate ACCA offenses because he did not actually commit acts of violence while committing those offenses.  But whether a crime qualifies as a predicate offense does not depend on the offender's actual conduct; instead, it depends on whether the legal elements of the crime qualify it as a predicate offense.  *See Shular v. United States*, 140 S. Ct. 779, 783 (2020) (describing the categorical approach).  Harrell's claims about his actual conduct are therefore irrelevant, as his offenses categorically qualify as ACCA predicates under binding Eighth Circuit precedents.  *See Gammell*, 932 F.3d at 1179 (first-degree aggravated robbery); *United States v. Lindsey*, 827 F.3d 733, 739–40 (8th Cir. 2016) (second-degree assault); *United States v. Huntington*, 44 F.4th 812, 814 (8th Cir. 2022) (per curiam) (relying on *Lindsey* to hold that third-degree assault is a violent felony).

### B.  Ineffective Assistance

Harrell contends that his trial attorney failed to make motions that Harrell wanted him to make and that he "lied in court saying I don't have appeal issues."  ECF No. 117 at 5–6.  Harrell appealed his conviction (and was represented by a different attorney) and Harrell has now filed a pro se § 2255 motion, yet neither Harrell nor his appellate attorney have identified a single meritorious argument that his trial attorney failed to make.  Therefore, Harrell's ineffective-assistance claim fails.  *See Strickland v.*

*Washington*, 466 U.S. 668, 688, 694 (1984) (to establish a claim of ineffective assistance, a petitioner must show both that his counsel's representation was objectively unreasonable and that, but for the error, there is a reasonable probability that the outcome of the proceeding would have been different).

### C. Prosecutorial Misconduct

Harrell alleges that "the prosecutor lied and said he would give me a downward departure if I go to sentencing for my [psych eval]." ECF No. 117 at 6. Assuming this is true, Harrell is nevertheless not entitled to relief because he cannot show prejudice. *See United States v. Thomason*, 991 F.3d 910, 914 (8th Cir.) ("To succeed on a claim of prosecutorial misconduct, Thomason must show that flagrant misconduct caused substantial prejudice to his rights."), *cert. denied*, 142 S. Ct. 388 (2021).

Prior to his change-of-plea hearing, Harrell signed his plea agreement. That plea agreement did not include any promise by the government to make a downward-departure motion, and that plea agreement included the statement—agreed to by Harrell—that the plea agreement (along with any other agreement "signed by the parties") was the "entire agreement and understanding between the United States and the defendant." ECF No. 35 ¶ 11. At his change-of-plea hearing, Harrell testified under oath that he had read the plea agreement, that his attorney had carefully explained all of the terms of the plea agreement to him, that his attorney had answered all of his

questions about the plea agreement, and that he understood the terms of the plea agreement. ECF No. 90 at 15-16. Harrell also testified under oath that, other than the promises set forth in his plea agreement (which, again, do not include any promise by the government to make a downward-departure motion, *see* ECF No. 35), neither the government nor anyone else had made any promises to him in order to get him to plead guilty. ECF No. 90 at 22. Thus, to the extent that Harrell may be claiming that his guilty plea was induced by a promise to move for a downward departure, his claim is meritless, as it is contradicted both by the plea agreement he signed and by the testimony he gave under oath at the change-of-plea hearing, and as Harrell offers no basis to disbelieve any of his sworn testimony. *See Voytik v. United States*, 778 F.2d 1306, 1308 (8th Cir. 1985) ("the defendant's representations during the plea-taking carry a strong presumption of verity and pose a 'formidable barrier in any subsequent collateral proceedings'" (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)).

To the extent that Harrell may be claiming that the prosecutor made such a promise *after* Harrell pleaded guilty, Harrell cannot show that the prosecutor's failure to make a downward-departure motion on the basis of the psychological report prejudiced him. The prosecutor's omission[3] had no effect on the Court's sentencing decision, as the Court had access to the psychological report, read every word of that report, drew its

---

[3] The Court notes that the prosecutor did cite the psychological report while discussing mitigating factors. ECF No. 92 at 22–23.

own conclusions from the report, and even quoted from the report at Harrell's sentencing hearing.

### D. Remaining Issues

Harrell seems to argue that he did not in fact commit the offense to which he pleaded guilty. *See* ECF No. 117 at 5 (stating that the gun did not belong to him and he never used or discharged it). He also states that he was "oversentenced." *Id*. In his plea agreement and at the change-of-plea hearing, however, Harrell admitted under oath to committing all the elements of the offense and further admitted under oath that he used or possessed the firearm in connection with the offense of discharging the firearm into an occupied residence. ECF No. 35 ¶¶ 2, 6(a); ECF No. 90 at 18–19, 26–30. As for his sentence, Harrell's sentence is far below the statutory maximum of life in prison, *see* 18 U.S.C. § 924(e); *Welch v. United States*, 578 U.S. 120, 122 (2016), and the Eighth Circuit has already rejected Harrell's argument that his sentence was substantively unreasonable. ECF No. 107. A § 2255 motion may not be used to reargue claims that have been rejected on direct appeal. *See Bear Stops v. United States*, 339 F.3d 777, 780 (8th Cir. 2003).

### ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Defendant's motion to vacate, set aside, or correct his sentence [ECF No. 117] is DENIED.

2. Defendant's motion for appointment of counsel [ECF No. 118] is DENIED.

3. No certificate of appealability will issue.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  May 23, 2023                                s/Patrick J. Schiltz
                                                    Patrick J. Schiltz, Chief Judge
                                                    United States District Court